**In re Denise Charlotte THOMAS, aka Denise Charlotte Herr, aka Misty Angel, Debtor.**

**AQUARIAN FOUNDATION, INC., Plaintiff,**

**v.**

**Misty ANGEL, formerly known as Denise Charlotte Thomas and Denise Charlotte Herr, Defendant.**

**Bankruptcy No. 83–00642. Adv. No. 84–0118.**

United States Bankruptcy Court, D. Hawaii.

Sept. 25, 1985.

---

Wayne D. Parsons, Honolulu, Hawaii, for plaintiff.

Misty Angel, pro se.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

Aquarian Foundation, Inc., a Washington religious nonprofit corporation ("Founda-

tion"), challenges the dischargeability of a debt allegedly owing to it by Misty Angel, formerly known as Denise Charlotte Thomas and Denise Charlotte Herr, ("Debtor"). The debt is alleged to amount to $31,412.87, including principal in the sum of $24,165.17, as reflected in the joint and several Judgment entered by the Superior Court of the State of Alaska, Third Judicial Circuit, on April 17, 1980, in No. 3AN–80–141 CIV. against Debtor and her former husband Michael Herr. The Judgment was subsequently entered in the First Circuit Court of the State of Hawaii in Civil No. 61579 on October 3, 1981. The Foundation seeks interest on the full amount of the Judgment at 8% from April 17, 1980 until October 3, 1981 and 10% Hawaii State interest from October 3, 1981 until the present.

Trial on the Foundation's claim was heard on March 18, 1985, at which hearing Wayne D. Parsons, Esq. and Trudy Senda, Esq. appeared on behalf of the Foundation and Debtor appeared on behalf of herself *pro-se.* Based upon the evidence presented, the records in the file and arguments adduced, the Court finds as follows.

## FINDINGS OF FACT

Debtor was a former member of the Foundation which was incorporated around 1955, with several branches or "unofficial" groups now organized throughout the Western World. It was in Hawaii about January, 1973, that Debtor first met Reverend Keith Rheinhart, the founder and "guru" of the Foundation, who persuaded her to join the Foundation.

Debtor then moved to Seattle, Washington, the headquarters of the Foundation. In 1976, she became a "spiritual leader" and thereafter, in 1977, she and Michael Herr, whom she had met in Seattle, were married. Debtor and Herr were divorced in 1980.

While they were in Seattle, both Herr and Debtor devoted their full time to the services of the Foundation, at which time, they were both completely dominated and controlled by the Foundation. For awhile,

Herr and Debtor both lived in the same residence with Rev. Rhinehart and they believed and obeyed his instructions. Because of their devotion and belief, Herr and Debtor were requested to travel to Anchorage, Alaska and to establish an organization and to recruit members for the Foundation.

When Herr and Debtor went to Anchorage and held their first meeting, only one individual was present. Both Herr and Debtor did missionary work to recruit members and increased the membership to around 12. In conducting the meetings and other gatherings, Herr and Debtor followed the personal instructions of Rev. Rhinehart.

At the meetings, Herr and Debtor gave instructions in the religious beliefs of the Foundation and they distributed literature received from the Foundation. When the members made contributions to the Foundation, Herr and Debtor furnished them with "sacred" gems in white envelopes. Then, pursuant to the personal instructions of Rev. Rhinehart, until mid-1978, Herr and Debtor forwarded two-thirds of the weekly collection to Rev. Rhinehart himself or to a designated person and retained the other one-third for their own use.

Sometime in January of 1978, in Seattle, Washington, in the presence of Rev. Rhinehart, Herr and Debtor received two separate checks from Thomas Rentz, each for $7,500.00. At his deposition held in Anchorage, Alaska, Rentz did not state that, when he gave the checks to Herr and Debtor, he informed them that the $15,000.00 were to be used by them to purchase a home for the Foundation. And, at the hearing, Rev. Rhinehart did not testify that, at the time that Rentz gave the checks to Herr and Debtor, Rentz or Rhinehart informed Herr and Debtor that the checks were to be used for the purpose of the Foundation. On the other hand, Debtor testified that Rentz purposely gave two separate checks to Herr and herself as a gift and that Rentz stated that he would take care of the gift taxes.

For several months, Herr and Debtor faithfully followed the teachings and instructions of Rev. Rhinehart. Then, after awhile, they both became disenchanted with the Foundation. Debtor testified that Herr and she found questionable the Foundation's practice of passing off cheap jewelry as "sacred" gems in return for donations ranging anywhere from $25.00 to $1,000.00 for each gem.

Herr and Debtor decided to disassociate themselves from the Foundation and sometime in May of 1978, they caused the incorporation of The Truth Center. After organizing The Truth Center, Herr and Debtor continued to use materials obtained from the Foundation's headquarters and represented that The Truth Center was a branch of the Foundation.

Shortly after incorporating The Truth Center, Herr and Debtor purchased a dwelling in their own names. In doing so, they requested April Lee, the broker who handled the transaction and a member of the Foundation, to keep such purchase confidential. Thereafter, Herr and Debtor represented to the membership that the dwelling in which they were residing and where they conducted the meetings was to be purchased in the future in the name of the Foundation.

After purchasing the dwelling in their own names, Herr and Debtor requested donations from the membership to help pay for the "rent" for the residence. Certain members, believing that the dwelling was being acquired later in the name of the Foundation, donated materials and labor estimated to be in excess of $12,000.00 to improve the dwelling. These members testified in their depositions held in Anchorage that, had they known that the "home" had been purchased by Herr and Debtor as their personal residence, they would not have spent so much time and money on the dwelling. They did so only in the belief that the "home" would eventually be acquired in the name of the Foundation.

After going to Anchorage, Alaska from Seattle, Herr and Debtor devoted their full time to the teachings of the Foundation, then later of the Truth Center. They did not have any outside work. However, somehow, after incorporation of the Truth Center, they acquired a new Cadillac, expensive China ware, expensive cameras, stereos and other personal luxury items. Debtor did not explain how she and Herr obtained the money to purchase these luxuries.

Sometime around September of 1978, the Foundation headquarters received reports that Herr and Debtor were making unkind remarks about the membership of the Foundation. As a result, in October, Mr. and Mrs. Dunn were sent to Anchorage, from Seattle to investigate the activities of Herr and Debtor. There was disagreement as to whether Herr and Debtor were sending to Seattle the proper amount of money donated by the membership. In addition, the membership was disturbed to learn that the residence had been secretly purchased by Herr and Debtor in their own names sometime in May of 1978. Great animosity brewed between Herr and Debtor on one side and the members of the Foundation on the other.

As a result, Herr and Debtor sold the dwelling to the Foundation and retained $18,000.00 for themselves. And, after Herr and Debtor had left Anchorage, a default judgment was obtained against them in the Alaska State Court.

Debtor filed her Chapter 7 petition on December 30, 1983, and the Foundation filed an objection to dischargeability on March 2, 1984, based upon 11 U.S.C. Section 523. A Complaint Against Dischargeability was then filed on May 23, 1984. Debtor filed an Answer to the Complaint on July 24, 1984 denying all the allegations. The Foundation seeks to have declared nondischargeable the $15,000.00 given to Herr and Debtor by Rentz which the Foundation claims should have been used for purposes of the Foundation. The Foundation also seeks to have declared nondischargeable $9,165.17 of money donated by the members of the Foundation in Alaska to Debtor and Herr which the Foundation claims were misappropriated.

## CONCLUSIONS OF LAW

1. The Complaint for Determination of Dischargeability of Debts filed by the Foundation was brought pursuant to 11 U.S.C. Sections 523(a)(2) and 523(a)(4).

Sections 523(a)(2)(A) and 523(a)(4) provide as follows:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

2. With reference to Section 523(a)(2)(A), to present a prima facie case of nondischargeability, the Ninth Circuit Court in *In re Taylor*, 514 F.2d 1370, (9th Cir.1975) held that the Plaintiffs must prove the following elements.

(1) that the debtor made the representations; (2) that at the time of making the representations the debtor knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

3. To prevail under Sec. 523(a)(4), the Foundation must prove two elements: (1) that Debtor was a fiduciary of the Foundation, and (2) that while a fiduciary, Debtor committed a fraud or defalcation.

4. And all of the elements that must be proven under Section 523(a)(2)(A) and Section 523(a)(4) must be proven by clear and convincing evidence, and the burden of proof is on the party seeking the exception to the discharge. *Schlect v. Thornton*, 544 F.2d 1005 (9th Cir.1976). And the exceptions to discharge are to be construed against the creditor and in favor of debtor. *In re Vickers*, 577 F.2d 683 (10th Cir.1978); *In re Kleppinger*, 27 B.R. 530 (Bkrtcy.M.D.Pa.1982).

5. With reference to the $15,000.00 received by Debtor and Herr from Rentz, there is absolutely no evidence of any solicitation by Herr or Debtor of said sum with the representation that the money will be used to purchase a home for the Foundation. Further, there is no evidence to show that, after receipt of the money, Herr and Debtor represented that the money will be used for the benefit of the Foundation.

6. Since the Court finds no representation on the part of Debtor, the court finds that the Foundation has not carried its burden of proof on this matter of the nondischargeability of the $15,000.00 under Sec. 523(a)(2)(A).

7. In the instant case, neither Rev. Rhinehart nor Rentz testified that, when the $15,000.00 were given to Herr and Debtor in two separate checks, they made it clear that the money was to be used for the Foundation. Rentz only said he thought the money was to be used for the Foundation. On the other hand, Debtor testified that the $15,000.00 were purposely given to Herr and herself in two separate checks because they were gifts and that Rentz had informed them that he would take care of the gift taxes. There was no rebuttal to Debtor's testimony, no explanation by Rentz as to the reason for two separate checks, instead of there being only one check.

8. The Court finds that the Foundation has failed to carry its burden of proof with reference to the $15,000.00 under Section 523(a)(4). Therefore, said sum is dischargeable.

9. With reference to the $9,165.17, the Court finds that such sum was obtained by Herr and Debtor as the official representative of the Foundation in Anchorage with authority to collect donations for the Foundation. As such official representatives, Herr and Debtors were fiduciaries of the Foundation. Thus, the first element necessary to prevail under Section 523(a)(4) is satisfied.

10. The evidence presented also shows that Debtor did not adequately account for the $9,165.17 received from the membership of the Foundation. And, Debtor did not explain from where the money was received for Herr and herself to purchase the Cadillac and other luxury items, when neither was engaged in any gainful employment. While purchasing these expensive luxury items, Herr and Debtor were constantly requesting the membership of the Foundation to help defray their living expenses, especially their "rent".

11. Defalcation includes the failure by a fiduciary to account for money received in his fiduciary capacity. *In Re Kleppinger*, 27 B.R. 530 (Bkrtcy.M.D.Pa. 1982). Since Debtor has failed to adequately account for the $9,165.17, the Court finds that the second element of Sec. 523(a)(4) has been satisfied.

12. The sum of $2,357.73 having been previously garnisheed from Debtor's salary, the Foundation is entitled to the sum of $9,165.17, less $2,357.73 which amounts to $6,807.44. Thus, the sum of $6,807.44, together with legal interest until paid, is nondischargeable.

Let Judgment be entered accordingly.